# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2015

Lyle W. Cayce
Clerk

No. 13-50348

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ISRAEL BRITO,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:10-CV-12

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:*

Israel Brito ("Israel")[1] appeals the district court's denial of his petition under 28 U.S.C. § 2255 seeking relief from his sentence upon a guilty plea to conspiracy to import cocaine. He claimed ineffective assistance of counsel in the matters leading up to and including the sentencing hearing. The district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Because several people with the last name "Brito" play a role in this case, we refer to these individuals by their first name.

No. 13-50348

court denied relief and denied a certificate of appealability ("COA"). Israel appealed.

We granted a COA on the questions of "whether the district court erred by denying [Israel's] claims that trial counsel was ineffective for advising him not to make a statement regarding the offense of conviction during the presentence interview and not advising him what to say during allocution." We then received briefing on the merits and oral arguments. We AFFIRM.

## I.     Facts and the Sentencing Hearing

Beginning in 2003, Israel, his wife Laura Brito ("Laura"), and his nephew Cesar Brito ("Cesar") conspired to import cocaine from Mexico to the United States. One of their couriers, Maria Flores, was caught at the port of entry in Del Rio, Texas, on September 28, 2003; she confessed to several prior trips and explained that Cesar had recruited her but Israel also assisted her by, among other things, providing her with a car and instructing her on travel routes. Israel, Laura, and Cesar were named in a four-count superseding indictment charging them with various cocaine-related crimes. In 2008, Israel pleaded guilty to the second count, conspiracy to import cocaine, in exchange for the government's agreement to do the following: dismiss the other charges; move for a third-level reduction for acceptance of responsibility under the U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3E1.1 if he was entitled to a two-level reduction; and recommend a sentence at the bottom of the advisory guidelines. In addition to pleading guilty, Israel also waived his right to appeal his guilty plea and any sentence imposed within the advisory guidelines, except on the grounds of prosecutorial misconduct and ineffective assistance of counsel.

Furthermore, as part of the plea agreement, Israel stipulated to a factual basis that contained several admissions but did not include Flores's seven previous trips or two trips by another driver Cesar recruited, Adriana

No. 13-50348

Cardenas.  In fact, he did not name Cardenas or acknowledge her existence or role in the conspiracy.

On May 8, 2008, Israel attended a presentence interview with a probation officer.  His attorney did not attend this interview but advised him not to discuss his conduct.  As a result, the probation officer did not recommend that Israel be given an acceptance-of-responsibility reduction in offense level under § 3E1.1, as he had not yet "truthfully admitt[ed] the conduct comprising the offense(s) of conviction."  *See* U.S.S.G. § 3E1.1 cmt. n.1(a) (2007).  To obtain this reduction, Israel had a second presentence interview on July 10, which his attorney did attend, though he issued the same instructions to Israel.  Without any admission of the offense conduct to probation, the presentence report did not recommend an adjustment for acceptance of responsibility.

According to the report, Israel's total offense level under the sentencing guidelines was 42, computed from a base offense level of 38 and a four-level increase for being "an organizer or leader of a criminal activity that involved five or more participants."  Israel was held responsible for 169.27 kg of cocaine, the sum of the known quantities seized from Flores (24.27 kg) and Cardenas (20 kg), and the estimated quantities previously transported by Flores (105 kg)[2] and Cardenas (20 kg).  This drug quantity determined the base offense level of 38.  As Israel had no criminal history, the guideline range for his total offense level of 42 was imprisonment for 360 months to life.

Israel timely filed objections to the presentence report, challenging the drug quantity, denial of the acceptance-of-responsibility reduction, and his characterization as an organizer or leader.  Most relevantly, Israel denied any involvement with Cardenas.  Thus, he requested that the 40 kg attributed to

---

[2] Flores stated that each of her prior 7 trips involved 20 kg of cocaine, while other, unnamed "cooperating witnesses" estimated her loads at 10 kg each.  The presentence report averaged these figures to arrive at 15 kg for each of the 7 trips, for a total of 105 kg of cocaine.

her be excluded from his drug quantity and urged that the four-level leadership increase be dropped, as without Cardenas the conspiracy involved fewer than the statutory requirement of five participants.

At Israel's sentencing hearing in 2009, the district court overruled most of Israel's objections to the presentence report. Israel's counsel had a discussion with the district court about whether Israel's failure to debrief with the probation officer precluded the acceptance of responsibility. The court took the position that admitting to relevant facts in the factual basis was not enough, there must be a full accounting to the probation officer.

After ruling on Israel's objections, the district court proceeded with sentencing. The court formally accepted Israel's guilty plea and then gave him the opportunity to speak on his own behalf.[3] During allocution, Israel stated that he had made a mistake and that he regretted it. However, he went on to state that he moved to Mexico in October 2003 and had nothing to do with Cesar or Cardenas. In addition, he stated that he came back to the United States to purchase supplies for his jewelry business and that his family was involved in "lots of different things" but that he was "never there in the picture." Israel protested that Cesar was the boss in the smuggling operation. Following these statements, his counsel offered a number of reasons why the district court should consider a downward departure. Allocution concluded with a final statement from Israel about his family.

The district court then stated that it was "contemplating a sentence outside of the guideline range, but [] was waiting to hear something from Mr. Brito." The district court expressed concern about Israel's continued denial of the Cardenas-related conduct and blaming of his nephew, Cesar. The district

---

[3] The court stated: "At this time, Mr. Brito, you have the opportunity to say whatever you'd like. And at this point this is allocution. So you can tell me about yourself, your family whatever you'd like to say."

No. 13-50348

court concluded: "The Court doesn't have any reason to sentence outside of the advisory guideline range.  I can't come up with anything when the defendant doesn't give me anything even here during allocution.  So the Court finds that the advisory guidelines are adequate . . . ."  Israel was sentenced to 360 months of imprisonment and 5 years of supervised release.

## II.    The § 2255 Proceeding

Pursuant to his plea agreement, Israel did not appeal.  Instead, through new counsel, he brought this action alleging that his trial counsel was ineffective for (1) advising him not to make a statement regarding the offense of conviction during the presentence interviews, and (2) not advising him on allocution.  Israel also filed an affidavit in which he stated that his counsel told him not to talk to the probation officer about his illegal conduct.  Israel explained that he did not understand why he had two presentence interviews nor was he told that following the advice of counsel during these interviews would preclude him from obtaining a reduction for acceptance of responsibility.  Regarding allocution, Israel stated that: (1) his counsel did not give him "advice about addressing the district court at sentencing"; (2) he "did not understand that there was no reason to bring up the small differences [he] had with the government about the case[] and that doing so would hurt [him]"; and (3) he would have "told the judge the facts like what [he] had confessed and admitted in the factual basis" had he understood the purpose of allocution.

To address these claims, the district court employed the familiar two-part test first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under this test, the defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different."  *United States v. Bishop*, 629 F.3d 462, 469 (5th Cir. 2010) (citing *Strickland*, 466 U.S. at 687–96).

5

The same judge who sentenced him considered the evidence presented in the § 2255 proceeding and concluded that Israel "oversimplified" what happened in contending that he would have "repeated" his factual basis if his counsel had given better advice. *United States v. Brito*, No. 2:07-CR-132-AM, order at 8 (W.D. Tex. Mar. 28, 2013), ECF No. 165. The court's opinion notes that trial counsel's strategy of attempting to limit relevant conduct and drug quantities to those admitted by Israel was a "sound strategy." *Id.* at 9. "By instructing [Israel] not to discuss the offense conduct with Probation, counsel prevented him from admitting to additional drug quantities *not contained in the factual basis . . . .*" *Id.* (emphasis added). The district court held that Israel "cannot in good faith argue that he could have only admitted to his involvement with 28.49 kilograms of cocaine, denied his involvement with the rest of the cocaine, and still been awarded acceptance." *Id.* at 10. The court concluded that, with respect to the ineffectiveness claim centered on the attorney's advice about the presentence interview, the advice was "strategic" and well within the range found not to be ineffective. *Id.*

With respect to the claim regarding ineffectiveness of advice about allocution, the district court found that it was not necessary for counsel to give any sort of specific instructions to Israel about allocution because allocution is a time for the defendant to speak for himself. *Id.* at 11. Even assuming such advice was necessary, the district court again concluded that the choice to downplay Israel's role in the offense was a reasonable strategic choice, even though it did not prove to be a winning one: "Both Brito and counsel tried to downplay Brito's role in the conspiracy, not doubt in hopes of prevailing with the argument that his sentence should be less than the 360 months recommended by the PSR. Had Brito accepted responsibility during sentencing, this argument would have been unavailing." *Id.* at 12.

No. 13-50348

The district court then addressed prejudice and concluded that, even now, Israel denies "full involvement." *Id.* The district court noted: "[Israel] did not disagree with minor facts; instead, he continued to deny major parts of the conspiracy. Most importantly, *there is absolutely no indication in his § 2255 motion that he has now fully accepted responsibility.*" *Id.* (emphasis added). He still refused to admit the Cardenas angle and his "post-2003 connection with Cesar." *Id.* at 13. In closing, the district court concluded: "Because Brito has provided nothing to the Court that would warrant any reconsideration of his sentence, he has not demonstrated a reasonable probability that but for counsel's errors the result of the proceeding would have been any different." *Id.*

## III.   Discussion

We review de novo the district court's ultimate legal conclusions and review any findings of fact for clear error. *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013). We agree with the district court's ultimate conclusion as to each issue.

### A.   Presentence Interview Advice

With respect to the advice during the presentence interview, we agree that trial counsel's advice represented reasonable strategy given the overall strategy of seeking a lower sentence based upon (from his standpoint) Israel's lesser role in the conspiracy. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. The strategy attributed to Israel's trial counsel *is* plausible: by not discussing offense conduct and thus preserving Israel's objections to total drug quantity, trial counsel was working for an even greater reduction in offense level than Israel would have received under § 3E1.1. As the district court stated, Israel cannot now disclaim his attorney's decisions just because he does not like the results or believes that

No. 13-50348

his counsel made some mistakes. *See Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011) ("That [counsel] may have been mistaken in *part* of his legal reasoning does not constitute ineffectiveness where the ultimate strategic choice was reasonable." (emphasis added)). We conclude that the district court did not err in denying relief on this ground.[4]

B. Allocution Advice

Israel and the Government disagree on the question of whether the district court correctly determined that trial counsel had no duty to give advice about the purpose of allocution. The right of allocution in federal courts is a statutory one, not a constitutional one, and it is provided by Federal Rule of Criminal Procedure 32(i)(4)(A)(ii): "Before imposing sentence, the court must: . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ." FED. R. CRIM. P. 32(i)(4)(A)(ii); *see United States v. De La Paz*, 698 F.2d 695, 697 (5th Cir. 1983) (explaining the nature of the allocution right). The parties have not cited and we have not located any federal circuit decisions squarely addressing the question of constitutional ineffectiveness of counsel as it relates to advice about allocution. We conclude that it is unnecessary to decide this question because even if we assume for the sake of argument that trial counsel had such a duty and failed to give such advice, the district court did not err in determining that Israel was not prejudiced.

Pursuant to *Strickland*'s prejudice prong, Israel bears the burden of demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at

---

[4] Thus, we do not and need not decide whether to adopt the reasoning of *United States v. Washington*, 619 F.3d 1252, 1261 (10th Cir. 2010), because, even assuming a duty to give advice regarding the presentence interview, we conclude that the district court did not err in its determination that trial counsel's advice was strategic.

694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787, 792 (2011)); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) ("To prevail on the prejudice prong of *Strickland*, there must be more than the mere possibility of a different outcome.").

Israel does not clearly articulate the precise advice that he should have received, but assuming, without deciding, that his trial counsel should have told him the purpose of allocution is "to permit the defendant to speak or present any information to mitigate the sentence," FED. R. CRIM. P. 32(i)(4)(A)(ii), nothing in the evidence he presented shows what difference such advice might have made. Instead, it is perfectly logical that minimizing one's role in an offense, admitting one's mistake, and showing regret—as Israel did during allocution—would be "information to mitigate a sentence." Israel's current evidence, which consists solely of his own affidavit and the sentencing transcript, does not address how he might have reacted to such advice. Instead, he asserts that if he "had understood that the point of addressing the judge was to show why I pleaded guilty . . . I would have told the judge the facts like what I had confessed and admitted in the factual basis."

Thus, Israel has not produced evidence showing that, given proper advice from counsel, he would have stated anything differently that would be substantially likely to produce a different result. *See Wines*, 691 F.3d at 604. In addition, even assuming a duty to give advice about allocution, Israel does not and cannot suggest that trial counsel must give the defendant a script. Nor is allocution specifically a time to talk about "why I pleaded guilty." A defendant is free to talk about that, of course, but that is not its specific purpose.

Even so, assuming *arguendo* that his affidavit shows that he would have "told the judge the facts like what [he] confessed and admitted in the factual basis," it is not these facts that are the problem. In his factual basis, Israel says nothing about the Cardenas transactions or any transactions other than the September 2003 conduct. It is these points that Israel did not address at any time prior to sentencing, denied at sentencing, and, to this day, has not admitted. Reviewing this evidence, the district judge concluded that there was nothing to "reconsider" about his original sentence. *Brito*, No. 2:07-CR-132-AM, order at 13 (W.D. Tex. Mar. 28, 2013), ECF No. 165.

We review the district judge's factual findings for clear error, and we conclude none has been shown here. *See United States v. Missio*, 597 F.2d 60, 61–62 (5th Cir. 1979); *see also Foster v. Wolfenbarger*, 687 F.3d 702, 708 (6th Cir. 2012) ("We give due deference to the conclusions of the trial judge on the effectiveness of counsel, because '[t]he judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial.'" (quoting *Massaro*, 538 U.S. at 506)).

In *Missio*, the petitioner filed a § 2255 petition arguing that six convictions included in his presentence report were unconstitutionally obtained and should not have been considered by the district judge at sentencing. 597 F.2d at 60. We determined that it was not clear from the transcript of the sentencing hearing whether the district judge had relied on the six convictions in imposing sentence. *Id.* at 61–62 & n.1. As in *Missio*, it is unclear from the transcript of the sentencing hearing what the district judge meant when she said that she was considering a below-guidelines sentence but "was waiting to hear something from Mr. Brito." Since the same judge presided over sentencing and the § 2255 proceeding, she is "in the best position to know" what she meant by this statement. 597 F.2d at 61. Her statements in the

order denying the § 2255 petition that Israel still has not accepted responsibility for relevant conduct and "has provided nothing to the Court that would warrant any reconsideration of his sentence," indicates that, at sentencing, she was "waiting to hear" something Israel has yet to say despite all the time that has passed and the filing of Israel's affidavit in the § 2255 proceeding.[5]  The district judge's determination that Israel still has not stated what she was "waiting to hear" at the sentencing hearing is a factual finding that is not clearly erroneous.  This finding supports the conclusion that Israel failed to meet his burden of showing "a 'substantial,' and not just a 'conceivable,' likelihood of a different result."  *Wines*, 691 F.3d at 604 (quoting *Richter*, 131 S. Ct. at 787, 792).  Accordingly, we conclude that the district court did not err in denying relief on this issue.

AFFIRMED.

---

[5] *See Brito*, No. 2:07-CR-132-AM, order at 12–13 (W.D. Tex. Mar. 28, 2013), ECF No. 165 ("Most importantly, there is absolutely no indication in his § 2255 motion that he has now fully accepted responsibility.  Although he has submitted an affidavit admitting his guilt, it amounts to nothing more than admitting to conduct discussed in the factual basis of the plea agreement . . . .  Brito still has not admitted to his post-2003 connection with Cesar Brito and Adriana Cardenas." (citations omitted)).