# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70005

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2015

Lyle W. Cayce
Clerk

TILON LASHON CARTER,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Petitioner-appellant Tilon Carter has filed a motion for a certificate of appealability (COA). We DENY his motion.

## FACTS AND PROCEEDINGS

Carter and his girlfriend, Letheka Allen, needed money. *Carter v. State*, No. AP-75603, 2009 WL 81328, at \*1 (Tex. Crim. App. Jan. 14, 2009) (unpublished). Allen's mother suggested that they rob James Tomlin, an 89-year-old man who was known to keep cash in his home. *Id.* After Carter and Allen gained entry to Tomlin's home, Carter bound Tomlin's hands and feet with duct tape. *Id.* Tomlin died and was found face down on the carpet with

No. 15-70005

his hands and feet bound and a piece of tape on his cheek. *Id.* Carter gave two confessions. *Id.* He contended that Tomlin was alive when Carter and Allen left and suggested that Tomlin had not been smothered. *Id.* But the medical examiner determined that the cause of Tomlin's death was "smothering with positional asphyxia." *Id.* at *2.

A Texas state jury convicted Carter of capital murder and sentenced him to death. *Id.* at *1. He appealed to the Texas Court of Criminal Appeals (CCA), which affirmed his conviction and sentence. *Id.* at *6. He then filed a post-conviction application for writ of habeas corpus in state court. A state trial judge entered findings of fact and conclusions of law and recommended that the CCA deny relief. With a few exceptions, the CCA adopted the trial judge's findings of fact and conclusions of law and denied habeas relief. *Ex Parte Carter*, No. WR-70722-01, 2010 WL 5232998 (Tex. Crim. App. Dec. 15, 2010) (unpublished).

Carter then filed a petition for writ of habeas corpus in federal district court. *Carter v. Stephens*, No. 4:10-CV-969-Y, 2015 WL 918677, at *1 (N.D. Tex. Mar. 4, 2015). The district court denied that petition and denied a COA. *Id.* at *8.

### STANDARD OF REVIEW

A COA should be granted when a habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[A] petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (some internal quotation marks omitted).

No. 15-70005

Because all of Carter's claims have been rejected on the merits by state courts, he can succeed only if the state courts' adjudications either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, to be entitled to a COA, Carter must demonstrate that it is debatable that the state court decisions were contrary to or unreasonable applications of clearly established Supreme Court precedent or were unreasonable determinations of the facts, or that Carter's arguments on these issues deserve further encouragement.

## DISCUSSION

Carter requests a COA as to three issues.  We deal with each in turn.

### A. Ineffective Assistance of Counsel Regarding Expert Witness

Carter first requests a COA on the issue of his counsel's ineffectiveness for failing "timely to contact, confer with, and produce in court the testimony of a forensic pathologist to testify regarding the cause and manner of the victim's death."  The Tarrant County Medical Examiner, Dr. Nizam Peerwani, performed an autopsy and testified that Tomlin's death was caused by "smothering with positional asphyxia."  Positional asphyxia involves a person being stuck in a position that prevents him from breathing.  By contrast, smothering involves pressing something (such as a hand) against someone's nose and mouth to prevent breathing.  Because smothering is an intentional behavior, Dr. Peerwani's testimony that Tomlin's death was caused by both smothering *and* positional asphyxia was important to prove that Carter had the specific intent to cause Tomlin's death, which was necessary for a capital murder conviction.

No. 15-70005

Carter's theory of the case was that he had not smothered Tomlin, but that Tomlin had instead accidentally died of only positional asphyxia. Carter's counsel tried to find a forensic expert who would testify that Tomlin's death had been caused solely by positional asphyxia or some other accidental cause. But his counsel did not move for the appointment of an expert until over a year after his initial counsel was appointed. Starting about two months before trial, Carter's counsel contacted and spoke with eight potential expert witnesses. Most of the contacted experts were too busy to take the case, although at least one expert was "not interested in working for the defense" and another "was reluctant to involve himself in the case in light of Dr. Peerwani's involvement."

Eventually Carter's counsel found a forensic pathologist, Dr. Charles Harvey, whom they hired to look at the autopsy and other reports. Carter's counsel sent the relevant records to Dr. Harvey shortly before Carter's trial began. The day after testimony began, Dr. Harvey left Carter's counsel a phone message saying that he "agreed with Dr. Peerwani and that his findings did not substantially differ from Dr. Peerwani's." Carter's counsel decided not to call Dr. Harvey. Carter ultimately was convicted of capital murder and sentenced to death.

Carter's state habeas petition argued that his trial counsel had rendered constitutionally ineffective assistance by failing "to timely contact, confer with, and present the testimony of a forensic pathologist." The state trial court held a hearing on this matter and applied the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether trial counsel was constitutionally ineffective. Under *Strickland*, a defendant asserting a claim of constitutionally deficient counsel must first "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant then must show not simply that "the errors had some conceivable effect on the outcome of the proceeding," but rather that "there is

4

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The state habeas court rejected Carter's claim under this standard. It held that his counsel's failure to call Dr. Harvey as a witness was not deficient performance but was instead a reasonable strategic decision, given that Dr. Harvey told them that he had "reviewed everything, agreed with Dr. Peerwani, and could not help the defense." But it held that counsel's substantial delay in procuring and consulting with a forensic expert was deficient performance. The state habeas court went on to hold that the assistance was not constitutionally deficient, however, because Carter had not been prejudiced under *Strickland*'s second prong. In particular, the state habeas court found that Dr. Harvey's written report regarding Tomlin's death "did not, and was not intended to, dispute or contradict Dr. Peerwani's autopsy findings because Dr. Harvey agreed that the cause of death was smothering with positional asphyxia." Further, "[h]ad Dr. Harvey been called to testify at [Carter's] trial, he would not have rendered an opinion based on natural causes that would have contradicted Dr. Peerwani's conclusions regarding the cause and manner of Tomlin's death." Thus, because Dr. Harvey did not contradict Dr. Peerwani's finding that Tomlin's death was at least partly caused by smothering, there was no "reasonable probability of changing the results of the proceedings" by consulting with Dr. Harvey earlier.

Carter argues that the state habeas court's decision debatably involved an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Specifically, he argues that the state habeas court unreasonably determined

Case: 15-70005     Document: 00513250826     Page: 6     Date Filed: 10/28/2015

No. 15-70005

that Carter was not prejudiced by his counsel's failure to introduce Dr. Harvey's expert testimony.[1]

At the state habeas proceeding, Dr. Harvey provided live testimony about his expert opinion on the cause of Tomlin's death. He repeatedly testified that he did not disagree with Dr. Peerwani's autopsy report. He also testified that "[t]here is smothering that's going on, and that's volitional." While Carter points to a few inconsistencies between Dr. Harvey's testimony and Dr. Peerwani's, reasonable jurists would not debate whether the state habeas court's decision was reasonable. In addition to repeatedly emphasizing that he did not disagree with the prosecution's expert witness, Dr. Harvey contradicted Carter's theory of the case by testifying that Tomlin had been smothered. The state habeas court was undebatably reasonable when it determined that there was no reasonable probability that Dr. Harvey's testimony would have helped the defense.

## B. Challenge to Denial of Instruction that Jurors Find Absence of Mitigating Circumstances Beyond a Reasonable Doubt

Carter next complains that the trial judge refused to give a jury instruction providing that the jurors had to find the absence of mitigating circumstances beyond a reasonable doubt. Carter candidly admits that this

---

[1] Carter does not argue that his trial counsel could have found a better expert witness if they had been quicker to discover that Dr. Harvey was unsuitable. Moreover, any such argument would fail because Carter has not produced any evidence that another expert could have provided better testimony for the defense.

> [W]e require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense."

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)) (all but first alteration in original). *Cf. Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) ("We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired.").

challenge is foreclosed by our precedent. *See, e.g.*, *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005) ("No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."). "We are bound by our precedent and must conclude that [Carter] has not made a substantial showing with respect to the denial of his right to a jury finding of beyond a reasonable doubt" regarding the lack of mitigating factors. *Avila v. Quarterman*, 560 F.3d 299, 315 (5th Cir. 2009).

Carter argues that we are not bound by circuit precedent because only *Supreme Court* precedent is relevant for § 2254(d) purposes. He cites *Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam), for this proposition. We disagree with his reading of *Parker*. *Parker* merely held that circuit precedent cannot *create* clearly-established law under § 2254(d)(1). But "an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam). We look to circuit precedent only to determine that we have already held that Carter's burden-of-proof argument fails under § 2254(d)(1), so we do not run afoul of *Parker*.

## C. Challenge to Instruction that Ten Jurors Must Agree to Sentence of Life Imprisonment

Carter's final complaint is that the jury was instructed that ten jurors had to agree on special issues in his favor before he could receive a sentence of life imprisonment.[2] In fact, if the jurors had failed to agree on a sentence, Carter would have received a life-imprisonment sentence. Carter argues that

---

[2] In contrast, all twelve jurors needed to agree before imposing a death sentence. This rule is known as the "10-12 Rule" or the "12-10 Rule." *Druery v. Thaler*, 647 F.3d 535, 542, 543 n.4 (2011).

it was unconstitutional to mislead the jury "into believing that their failure to agree [would] not result [in] a judgment for the defendant."

Binding circuit precedent forecloses Carter's argument. *See, e.g.*, *Druery*, 647 F.3d at 542–45. Supreme Court precedent forbids jury instructions that misstate the jury's role under local law, but we have held that the Texas jury instruction about the 10-12 rule does not misstate the jury's role. *Id.* We have also held that this argument does not raise a substantial issue warranting the issuance of a COA. *Id.* Accordingly, given the absence of any intervening change in the law, we are bound by our precedent and must conclude that Carter has not made a substantial showing with respect to the instruction that ten jurors had to agree to impose a life sentence.[3]

## CONCLUSION

For the foregoing reasons, we DENY Carter's motion for a COA.

---

[3] We again look to circuit precedent only "to ascertain whether [we have] already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall*, 133 S. Ct. at 1450 (2013).

8