UNITED STATES of America,
Plaintiff–Appellee,

v.

John O. GREEN a/k/a John O.
Hornung, Defendant–Appellant.

No. 88–4557
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1989.
As Amended on Denial of Rehearing
Oct. 11, 1989.

John O. Green, Austin, Tex., pro se.

Richard T. Starrett, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for U.S.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On December 9, 1986, John O. Green pleaded guilty to one count of interstate travel to promote, manage, establish, carry on and facilitate an unlawful business enterprise involving cocaine. On January 12, 1987, he was sentenced to a term of five years imprisonment to run concurrently with another sentence imposed in the Western District of Oklahoma.

Green sought reduction of his sentence through a Fed.R.Crim.P. 35 motion, un-related to the instant motion, which was denied by the district court and appealed to this court. Green then filed his 28 U.S.C. § 2255 supplemental motion, which was also denied by the district court, and he has appealed that decision to this court.

Green contends that (1) the district court before which he pleaded guilty had no jurisdiction over his case; (2) his guilty plea was not knowing and voluntary due to ineffective assistance of counsel and violations of Rule 11; and (3) his plea should be void because the government has breached the plea agreement. We agree with the district court that none of Mr. Green's contentions have merit, and we affirm.

## I. *Jurisdiction*

Green was first indicted on June 1, 1984, and the case was assigned to Judge William H. Barbour, Jr. On October 9, 1985 Green's attorney filed a motion to dismiss the indictment for violation of the Speedy Trial Act. Judge Barbour responded on December 11, 1985 by dismissing the case without prejudice. Green appealed the dismissal without prejudice to this court on December 18, 1985. On October 14, 1986, we dismissed the appeal for lack of jurisdiction because the dismissal without prejudice was not a final order. In the meantime, Green was reindicted on December 17, 1985 on the same three charges as in the earlier indictment and this time the case was assigned to Judge Tom S. Lee pursuant to a routine procedure of randomly assigning cases. Green filed a motion to dismiss for lack of jurisdiction on April 2, 1986. On December 9, 1986 Green pleaded guilty to Count II of the indictment and on January 12, 1987 he was sentenced to five years imprisonment. He brought this motion to vacate under 28 U.S.C. § 2255, claiming, *inter alia*, that (1) Judge Barbour retained jurisdiction over the case, which should not have gone before Judge Lee after the second indictment, and (2) Judge Barbour's dismissal of the first indictment should not have been without prejudice so his second indictment was improper. Both of his assertions are erroneous.

Green argues initially that the court which convicted and sentenced him lacked jurisdiction over his case. He notes the original indictment in Judge Barbour's court, which was dismissed without prejudice, and the appeal from that dismissal which was dismissed for lack of jurisdiction on the ground that there was no final order in the district court. In Green's view his case was before Judge Barbour, and these events deprived Judge Lee of jurisdiction over the second indictment. The short answer to this contention is that the second indictment initiated a separate criminal proceeding, and jurisdiction over the latter did not depend on the former. Green cites us to no absolute bar against the government having two indictments pending simultaneously which both allege the same violations by the same defendant. The Double Jeopardy Clause does not provide such a bar, since jeopardy does not generally attach until a jury has been empanelled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). Green's argument that the case should not have been assigned to Judge Lee upon reindictment, but should have remained with Judge Barbour, is without merit. A defendant has no right to have his case heard before a particular judge.

■ Green argues that his appeal of the dismissal without prejudice removed jurisdiction from the district court and barred further action on his case until the appeal was resolved. The filing of a timely and sufficient notice of appeal does transfer jurisdiction over matters involved in the appeal from the district court to the court of appeals, thus divesting the district court of jurisdiction to take any action with regard to the matter except in aid of the appeal. *United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir.1979). Notice of appeal from a non-appealable order, however, does not render void for lack of jurisdiction acts of the trial court taken in the interval between filing of the notice and dismissal of the appeal. *Id.*, at 691. Green's appeal was from a non-appealable order, so jurisdiction did not rest in the court of appeals. Also, the actions Green complains of—his plea, conviction, and sen-

tencing—all took place *after* his appeal was dismissed. For these reasons the district court did not lack jurisdiction to convict the defendant at the time of his guilty plea.

■ Green also contends that Judge Lee lacked jurisdiction because of the Speedy Trial Act violation which resulted in dismissal of the first indictment. Green argues that Judge Barbour should have dismissed the first indictment with prejudice, precluding subsequent indictment for the same offenses. The Speedy Trial Act of 1974 requires dismissal when indictment or trial is untimely, but leaves to the district court's discretion the decision whether to dismiss with or without prejudice. 18 U.S.C. § 3162(a)(1). *See United States v. Peeples*, 811 F.2d 849, 850 (5th Cir.1987); *United States v. Salgado–Hernandez*, 790 F.2d 1265 (5th Cir.1986), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *United States v. Thomas*, 705 F.2d 709, 710 (4th Cir.1983). "The Act does not create a presumption in favor of dismissal with prejudice when its time limits are violated, ... [but] the decision is entrusted to the sound discretion of the trial judge and ... no preference is accorded to either kind of dismissal." *Salgado–Hernandez*, 790 F.2d at 1267, citing *United States v. Caparella*, 716 F.2d 976, 978–80 (2d Cir.1983); *United States v. Brown*, 770 F.2d 241, 243 (1st Cir.1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986); *United States v. Russo*, 741 F.2d 1264, 1266–67 (11th Cir.1984).

The Act states

In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and the administration of justice,

18 U.S.C.A. § 3162(a)(1). The trial court has broad discretion, and this court may only review the trial court's decision for abuse of that discretion. *Salgado–Hernandez*, 790 F.2d at 1267. Green has not

alleged that Judge Barbour abused his discretion in dismissing without prejudice, and does not challenge his reindictment on the above-mentioned factors. Rather, relying on legislative history, he argues that Judge Barbour was required to dismiss with prejudice unless he found "exceptional circumstances" justifying a different result. Green's reliance on this legislative history is misplaced, however, as it relates to an earlier version of this provision which was amended to its present form during floor debates. *See United States v. Taylor,* — U.S. ——, 108 S.Ct. 2413, 2418 n. 8, 101 L.Ed.2d 297 (1988). "The thrust of the compromise [incorporated into the Act by Amendment] was that the decision to dismiss with or without prejudice was left to the guided discretion of the district court, and that neither remedy was given priority." *Id.* 108 S.Ct. at 2418.

There is no indication that Judge Barbour abused his discretion in dismissing the case without prejudice. Therefore the dismissal does not stand as a bar to the subsequent disposal of the case before Judge Lee upon reindictment.

## II. *Ineffective Assistance of Counsel*

Green asserts on appeal that he received ineffective assistance of counsel based upon his counsel's failure to prepare his defense, failure to file a requested notice of appeal, failure to disclose a conflict of interest, and deliberate misrepresentation which induced his guilty plea.

To prevail on a claim that he was denied his federal constitutional right to effective assistance of counsel Green would have to satisfy two requirements. First, he would have to show that his attorney's conduct fell below an objective standard of reasonableness. Second, he would have to demonstrate a reasonable probability that he was prejudiced by his attorney's unprofessional errors. *Strickland v. Washington,* 466 U.S. 668, 689, 694, 104 S.Ct. 2052, 2057, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, " '[p]rejudice' occurs if 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on

going to trial.' " *United States v. Smith,* 844 F.2d 203, 209 (5th Cir.1988) (quoting *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). Although Green claims that his guilty plea was induced by the unprofessional conduct of his counsel, we are unpersuaded.

▪ (A) Green first asserts that his retained counsel, Carl Hughes, did not adequately prepare for trial. The district court concluded that in terms of preparedness Hughes' representation did not fall below an objective standard of reasonableness, and we agree. Hughes had represented Green in defending against criminal charges in Oklahoma, and he had known Green for ten years. Judge Lee found that Hughes aggressively represented Green and demonstrated "a detailed understanding of both the facts and the charged offenses." The district court's factual findings as to Hughes' actions must be upheld unless they are clearly erroneous. *See United States v. Rusmisel,* 716 F.2d 301 (5th Cir.1983); *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.), *reh'g denied,* 662 F.2d 1116, *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1981). The record does not show that the trial court was erroneous in finding that Hughes aggressively represented Green and understood the case in detail. On the contrary, the transcripts of the change-of-plea and sentencing hearings show that Hughes was very familiar with the case.

Green asserts that Hughes' representation was inadequate in that he failed to interview witnesses and confirm other leads to refute the charges in the indictment. Green has not demonstrated prejudice, however, as he has failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by his counsel, and has failed to show that counsel's failure to follow up on his leads was unreasonable. To show that counsel's performance was deficient Green would have to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.,* at 691, 104 S.Ct. at 2066. In assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. *Id.* A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *See Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982); *United States v. Lewis,* 786 F.2d 1278 (5th Cir.1986); *Alexander v. McCotter,* 775 F.2d 595 (5th Cir.1985). Green has been unable to show what further investigation would have revealed and how it would have helped him.

Green alleges that his counsel should have filed dispositive or suppression motions, but failed to do so. Motions to suppress evidence were filed in the prior proceedings before Judge Barbour, however, and after two days of hearings the motions were resolved adversely to appellant. Green fails to allege that motions concerning different dispositive issues should have been filed. Nor does he allege that a different outcome would have resulted if Hughes had pursued the same motions before Judge Lee. Obviously, for Green to prove that his counsel was ineffective for failing to ·pursue these motions he must show with specificity what should have been done differently and how the outcome of the proceeding would have been different. This he has failed to do.

(B) Green also claims that Hughes failed to file a requested notice of appeal. In his supporting affidavit Green stated that he called Hughes' office and spoke to his associate, who told Green "they would have to be paid more money" before they would file an appeal. No notice of appeal was filed.

■ If Green had alleged that his attorney misled him into believing that a notice of appeal had been filed he might have been entitled to post-conviction relief in the form of an out-of-time appeal. *See Mack v. Smith,* 659 F.2d 23, 25 (1981). He would not be entitled to have his plea vacated, as his decision to plead guilty was not affected by a later failure to file a notice of appeal. Green has not shown that he was prejudiced, however, even if his attorney erred. It is clear from the record that Green did not rely on Hughes filing such notice because Green knew Hughes would not pursue an appeal without being paid. Green was a lawyer and was aware of his right to appeal and the need for notice of appeal, yet he never attempted to file *pro se* a notice of appeal.

■ (C) Defendant next argues that his counsel misled him with regard to the filing of a motion to dismiss and that Hughes usurped his decision to plead. This is the heart of his ineffective assistance claim. Stripped to its essentials, Green's claim is that Hughes told him that he had filed a motion to dismiss the case; that the motion would remain outstanding after he pleaded guilty; and that the judge would decide on the motion after the plea. Green alleges that no such motion has actually been filed, and that if it weren't for Hughes false statements concerning the motion he would not have pleaded guilty. The district court found these contentions to be without merit, and this conclusion is supported by the record. First, Green's allegation that he thought a motion had been filed which would remain outstanding after his plea is implausible. Second, Green has not shown how he was prejudiced or how his plea would have been changed had he known the motion was not filed.

Defendant's assertion that he thought a motion to dismiss was preserved despite his guilty plea is not borne out by the record. The plea agreement and guilty plea colloquy make it clear that there was no reservation of pre-trial motions, and that the defendant was, by his guilty plea, giving up all of the rights attendant to a trial. Even after the change-of-plea hearing, after Green asserts that he began to doubt that a motion had been filed, he did not question what had happened with the motion.

In *United States v. Walsh,* 733 F.2d 31, 34 (6th Cir.1984), the court denied relief even though it found that the defendant had not been informed of a special parole term prior to entry of his guilty plea because Walsh did not question the defect in his plea agreement when he learned of the parole term prior to sentencing. The court stated

> Nor did Walsh raise the issue in a direct appeal.... In light of these facts, we are unwilling to allow collateral attack "to service for an appeal".... Therefore, we find that Walsh's failure to object to the validity of his plea agreement in a timely manner precludes the granting of habeas relief.

*Id.* at 34–35.

Defendant's present complaints about misrepresentations by Hughes concerning the filing of the motion to dismiss are similar to Walsh's unavailing complaints. In both cases, defendants have proceeded forward after having obtained knowledge which should have caused them to raise an objection, if the facts were as they asserted. Defendant went through the entire sentencing hearing without making any inquiry as to the status of the motion to dismiss. The defendant went forward with plea and sentencing, all the time assuring the court that he understood the proceedings in which he was involved, that he was satisfied with his counsel, and that there were no side agreements or promises affecting his change of plea. The district court found that Green's statements, made under oath at the change of plea hearing, were credible, and not his present allegations.

> The representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.

*Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Green, himself a lawyer, made no indication at the plea hearing or his sentencing that he was reserving any grounds for post-plea-and-sentence determination by the district court or as a conditional plea on appeal. It should be further noted that Green did not raise the theory that Hughes misled him regarding the allegedly revivable motion to dismiss until over a year after his sentence. For Green to assert that he participated in the change-of-plea process and sentencing, but did not believe the guilty conviction would endure because of a never-expressed belief that an unfiled motion to dismiss based on lack of jurisdiction due to amorphous Speedy Trial Act grounds would be granted after his plea and sentence, and thereby eclipse his plea agreement and guilty plea is palpably incredible.

More importantly, even if his lawyer had told him that there was a motion to dismiss which would remain outstanding after his guilty plea, Green has failed to indicate why this induced him to plead guilty instead of go to trial. There was a motion to dismiss filed by prior counsel in the case. Defendant makes no attempt to give a reason why a subsequent motion to dismiss would have been more advantageous. Our inquiry is not concerned with whether Green would have insisted upon resolution of a motion to dismiss for lack of jurisdiction prior to pleading guilty, but whether he would have chosen to go to trial rather than plead guilty. Green never alleged that his attorney told him he would lose the right to have his motion to dismiss resolved if he went to trial but not if he pleaded guilty. Green has merely alleged that he thought a guilty plea before a court with no jurisdiction was not binding. He is right in that contention: he did not waive his right to challenge jurisdiction by pleading guilty. He would not have waived that right by going to trial either. What Green has failed to show is that he would have been better off going to trial instead of pleading guilty, or that his attorney misled him into thinking he would lose the right to challenge jurisdiction if he went to trial. Even if his attorney misled him as Green asserts, he has not shown how the misrepresentation could have changed his plea.

■ (D) Green also asserts that Hughes had a financial conflict of interest in his case. His specific argument is difficult to ascertain. He states that Hughes induced him to enter a guilty plea and consent to forfeiture of property in order to "insulate[ ]" the fees counsel had already received. He further states that later he learned "of the nonforfeitability of attorney fees." This argument is logically flawed. There is no apparent conflict of interest. Green has not shown how his attorney could benefit at his expense.

For the foregoing reasons Green has failed to demonstrate a lack of effective assistance of counsel.

### III. *Compliance with Rule 11*

Green contends that the district court failed to comply with Fed.R.Crim.P. 11, by failing to advise him of the essential elements of the offense to which he pleaded to and by failing to establish the voluntariness of the plea.

### A. Essential elements of the defense

Rule 11 requires that the court inform the defendant of the nature of the charge to which the plea is offered.

> For simple charges ... a reading of the indictment, followed by an opportunity given the defendant to ask questions about it will usually suffice. Charges of a more complex nature, incorporating esoteric terms of concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit....

*United States v. Dayton,* 604 F.2d 931, 938 (5th Cir.1979) (en banc). The courts may rely on the defendant's sophistication and intelligence, and factors such as whether the defendant is a member of the bar in deciding how detailed an explanation to give. *Id.*

The standard of review for failing to comply with Rule 11 depends upon the type of error. A *McCarthy*-type error wherein the court completely fails to address any

one or more of the rule's three core concerns (absence of coercion, understanding of the accusation and knowledge of the direct consequences of the plea) requires automatic reversal. *Id.,* at 939. Omitting to tell the defendant of an essential element of the offense entails a complete failure to inform the defendant of the nature of the offense to which he pleads, and requires reversal. *United States v. Punch,* 709 F.2d 889, 896 (5th Cir.1983).

■ The Supreme Court has held, however, that a defendant is not entitled to collateral relief under § 2255 for a formal violation of Rule 11. *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Unless the error "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure'" the conviction pursuant to guilty plea is not open to collateral attack. *Id.,* at 784, 99 S.Ct. at 2087. Like the defendant in *Timmreck,* Green does not assert that if the trial judge had properly advised him, he would not have pleaded guilty. We have followed *Timmreck* in several of our subsequent cases, holding that in order for a defendant challenging his sentence pursuant to § 2255 to qualify for relief he must show prejudice. *United States v. Patterson,* 739 F.2d 191, 195 (5th Cir.1984). *United States v. Saldana,* 731 F.2d 1192, 1193 (5th Cir.1984); *Keel v. United States,* 585 F.2d 110, 113 (5th Cir.1978) (en banc). Appellant has shown no such prejudice here.

The defendant asserts that a complete failure to address an essential element of the charge occurred in the Rule 11 proceeding at his change of plea hearing.

Specifically, he alleges that

(1) the court omitted that portion of Count II which charged the accused with unlawful activity "in violation of sections 841 and 846, Title 21, United States Code;"

(2) the court made no reference to, nor gave any explanation of Section 802(6) referring to unlawful activity;

(3) the court explained "unlawful activity" with reference to state law, and did not indicate whether he meant Mississippi or Oklahoma;

(4) the court did not explain the narcotics offenses in either state, nor whether appellant was accused of violating any state narcotics laws; and

(5) the court gave no explanation of Section 2, Title 18—aiding and abetting.

The district court may not have stated with particularity all that Green contends should have been stated, but there was no complete failure to inform. The adequacy of the court's explanation should therefore be judged by the standard set in *Timmreck*. We find that the court did inform Green of the essential elements of the offense to which he pleaded guilty, and Green has failed to plead or prove that he would not have pleaded guilty if the district court had more precisely explained the charge. *See Patterson*, 739 F.2d at 195.

The Count to which Green pleaded guilty reads as follows:

### COUNT II

That on or about October 20–21, 1982, JOHN OLIVER HORNUNG a/k/a

JOHN OLIVER GREEN, defendant herein, did travel and did aid, abet and cause travel in interstate commerce from the State of Oklahoma to Hinds County, State of Mississippi, in the Jackson Division of the Southern District of Mississippi, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, the unlawful activity being a business enterprise involving cocaine, a controlled substance, in violation of Section 841 and 846, Title 21, United States Code, and the defendant did thereafter perform and attempt to perform acts to promote, manage, carry on and facilitate the promotion, management and carrying on of the unlawful activity previously described, in violation of Section 1952(a)(3) and Section 2, Title 18, United States Code.

The district court recited the above count, only omitting to mention "in violation of sections 841 and 846, Title 21, United States Code." The court further explained the essential elements of a Travel Act violation.[1]

1. The relevant portions of the record of Green's change-of-plea hearing are set forth below:

THE COURT: I'll now discuss the nature of the charge brought against you and what the Government would have to prove.

Count II of the indictment charges that on or about October 20th and 21st, 1982, you did travel and aid and abet and cause travel in interstate commerce, from the state of Oklahoma to Hinds County, Mississippi, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, the unlawful activity being a business enterprise involving cocaine, a controlled substance; and the indictment further charges that you thereafter performed and attempted to perform acts to promote, manage, carry on and facilitate the promotion, management and carrying on of the unlawful activity previously described, in violation of Section 1952(a)(3) and Section II, Title 18 of the United States Code.

I'm going to explain now to you the essential elements of the offenses described in Count II of the indictment.

Title 18, United States Code, Section 1952, provides that whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce with intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of an unlawful activity and thereafter performs or attempts to perform any act to promote, manage, establish or carry on such unlawful activity shall be guilty of an offense against the United States.

There are three essential elements which must be proved beyond a reasonable doubt in order to establish the offense proscribed by this law: first, that you traveled in interstate commerce on or about the time and between the places charged in the indictment; second, that you engaged in such travel with the specific intent to promote, manage, establish or carry on an unlawful activity; and third, that you thereafter knowingly and willfully committed an act to promote, manage, establish or carry on such unlawful activity.

The term "interstate commerce" means transportation or movement between one state and another state.

The term "unlawful activity" includes any business enterprise involving narcotics offenses in violation of the law of the state in which they are committed.

To constitute a business enterprise, what must be proved beyond a reasonable doubt is that you engaged in a continuous course of

The crux of Green's claim is that he was charged with travelling with the intent to promote an illegal activity, but was never told what that illegal activity was. This is not borne out by the record. He was told that the unlawful activity was a business enterprise involving cocaine. Unlawful activity was first described as a business enterprise involving narcotics offenses, but business activity was then described as a "series of transactions for profit." Section 841 makes it illegal to knowingly or intentionally manufacture, distribute or dispense, or possess with the intent to manufacture, distribute or dispense a controlled substance. While the judge did not recite what a § 841 violation entails, he did say that the illegal activity Green was charged with "involv[ed] cocaine, a controlled substance," and was a business enterprise, that could involve a "series of transactions." This adequately described the activity prohibited under § 841. At least one other circuit has held that it is unnecessary for the district court to outline the elements of the pertinent state narcotics laws which comprise the unlawful activity promoted or carried on through interstate travel. *United States v. Bambulas,* 571 F.2d 525, 527 (10th Cir.1978). Section 846 describes the lesser included offense of conspiring or attempting to commit an offense of the narcotics laws. That was adequately explained when the district court discussed aiding and abetting. The hearing transcript also shows that prior to Green's actual guilty plea, and prior to the judge's accepting it, the government attorney read a statement of what the government would prove if the case went to trial. The attorney referred to "smuggling cocaine," transporting cocaine into the country and an agreement that Green "would launder or clean up the money that [the other conspirators] were making smuggling cocaine." It is permissible for a

judge to allow the district attorney to read some of the charges to the defendant in the judge's presence instead of the judge reading them himself. *See Punch,* 709 F.2d at 894. Between the judge and the government's attorney Green was fully informed of the charges against him.

### B. Voluntariness of Plea

■ Appellant claims he was never informed that his guilty plea waived any claim under the Speedy Trial Act and thus that his plea was not voluntary. This claim is refuted by the record. Green was specifically told that a guilty plea waived all rights incident to trial. This includes the right to claim that he was not brought to trial in a timely manner. If Green's real contention is that he was not advised that a guilty plea would waive the right to contest jurisdiction based upon the earlier dismissal without prejudice on Speedy Trial Act grounds, then there was no error. Green's guilty plea did not waive that right, so there was no need for such an instruction. Green stated under oath that his plea was voluntary and the district court so found.

### IV. *Violation of Plea Agreement*

■ Green claims that his sentence should be vacated because the government has failed to keep several promises that were the basis for his agreement to plead guilty. Green has not shown that the government has failed to abide by its agreement. The appellant claims that the government agreed to put him in the Defendant/Witness program and has failed to keep that promise. That alleged promise is not included in the plea agreement that appellant signed. No mention of such a promise was made at his change-of-plea or sentencing hearings. The only evidence in the record that Green contends supports his claim is a letter from 1985 showing that

conduct or series of transactions for profit rather than casual, sporadic or isolated activity.

Title 18, United States Code, Section 2 provides: Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal. Whoever

willfully causes an act to be done, which, if directly performed by him or another, would be an offense against the United States, is punishable as a principal.

With that explanation I've made, do you understand the offenses—and really it's one count, but there's the aiding and abetting charge too—in Count II of the indictment?

such a program was discussed as part of a potential plea bargain in the earlier proceeding before Judge Barbour. The subject of earlier plea negotiations cannot be deemed to be a part of a later agreement. In fact, the record refutes Green's contention that there was any agreement about the Defendant/Witness program, as the plea agreement specifically states that there were no other side agreements or representations other than those set out in writing in the agreement.

Green also claims that the government breached its agreement to take no position on the calculation of credit for time previously served. It is clear from the transcript of the sentencing hearing that the government took no position on this issue, and the court expressly stated that the defendant was to get all the credit he was entitled to under the law. Whether or not the government is taking a position on credit in another case is irrelevant to this case.

Finally, Green contends that the government has breached its agreement to return some of his property. It was agreed that he would be given a reasonable opportunity to produce evidence showing ownership of items to try to establish that they are not forfeitable. There was no other agreement regarding the return of any property to Green. The forfeitability of some of Green's property was the subject of a separate proceeding. *United States v. One Parcel of Real Property*, 712 F.Supp. 525 (S.D.Miss.1988), *aff'd*, 875 F.2d 859 (5th Cir.1989). The court dismissed the Motion to Vacate the Forfeiture because it was not timely, so the government has no duty to return any property to Green. Green has not shown that the government has failed to return to him any property it was obligated to return. Therefore there is no showing of breach of the plea agreement.

## V. *Evidentiary Hearing*

In overruling the appellant's § 2255 motion Judge Lee noted "in rendering its decision, the Court has reviewed the motions, briefs in support thereof along with attachments, and the responses by the government." There was no need for an evidentiary hearing since the claims made by the defendant were either contrary to law or plainly refuted by the record. In such instance an evidentiary hearing is not required. *See, e.g., Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir.1983), *reh'g denied*, 709 F.2d 712, *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984); *Williams v. Blackburn*, 649 F.2d 1019, 1021 (5th Cir.1981); *Clayton v. Estelle*, 541 F.2d 486, 488 (5th Cir.1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 230 (1977).

## VI. *Conclusion*

The appellant's contentions are not supported by the law or the record in this case. He pleaded guilty before a court which properly had jurisdiction in this case. The record shows that he was fully aware of the charges to which he pleaded guilty and that his plea was voluntary. He has failed to show any prejudice because of his counsel's alleged errors. The record also makes it clear that the government has met all of its obligations under the plea agreement. All of Green's claims can be resolved by determinations of law and facts which are clear from the record, therefore no evidentiary hearing was required in the district court. Accordingly, we

AFFIRM.