**UNITED STATES of America,
Plaintiff,**

v.

**Donald Dean BREWER, Sherri
Lynn Brewer, Defendants.**

**Criminal No. SA–11–CR–964–FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 17, 2013.

citizens on seventeen counts of conspiracy to defraud, wire fraud and major fraud against the United States, alleging creation of a sham contracting operation which led to $6,445,370 in ill gotten gains, half of which went to the Brewers, and all of which were stolen from the taxpayers.

### The Trial

James K. Blankinship, Assistant United States Attorney, San Antonio, TX, for Plaintiff.

## POST-JUDGMENT OPINION IN SUPPORT OF THE JURY'S VERDICT OF GUILTY AND THE COURT'S IMPOSITION OF PUNISHMENT

FRED BIERY, Chief Judge.

The Court has jurisdiction to issue a post-judgment opinion pursuant to *United States v. Green*, 882 F.2d 999, 1001 (5th Cir.1989) (stating a district court retains jurisdiction after the filing of a notice of appeal to proceed as to matters "in aid of the appeal").[1]

### The Indictment

Donald Dean Brewer and Sherri Lynn Brewer were indicted by a grand jury of

Following a three week trial, a jury of their peers convicted the Brewers on all counts beyond a reasonable doubt. While the Brewers mounted a vigorous defense, the jury's verdict was supported by overwhelmingly sufficient evidence (some of it being uncontested) of lies, deceit, obfuscation and fiduciary misfeasance, malfeasance and nonfeasance.

While the Brewers raised so-called *Skilling* issues before, during and after the trial, the Court finds them inapposite in this case and further notes that Mr. Skilling is still in prison.[2] Moreover, even *if Skilling* applies, in part, the Court finds the verdict of guilt is supported not only by sufficient evidence, but also by various legal theories. While the Brewers were not indicted for money laundering, the evi-

1. The Court of Appeals for the Fifth Circuit has held that a written order, entered after a notice of appeal, which memorializes or explains a prior ruling is made "in aid of the appeal." *Silverthorne v. Laird*, 460 F.2d 1175, 1178 (5th Cir.1972) (holding district court's written opinion explaining a judgment, filed four months after notice of appeal and two days prior to oral argument was "of great aid in [the] appeal," allowing the appellate court "to examine the case with a thorough understanding of the lower court's posture"). Several other appellate courts have likewise held. *See United States v. Sims*, 708 F.3d 832, 834 (6th Cir.2013) (considering the district court's written opinion memorializing a prior oral ruling, even though opinion was written after notice of appeal); *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir.1991) (same); *Blaine v. Whirlpool Corp.*, 891 F.2d 203, 204 (8th Cir.1989)

(same). In fact, the Court of Appeals for the Eleventh Circuit has specifically held that a sentencing court has jurisdiction to issue a post-judgment, post-appeal supplemental order detailing its rationale for a sentencing departure because such an order facilitates, rather than interferes with, the review of the appeal. *See United States v. Vernier*, 152 Fed. Appx. 827, 835–836 (11th Cir.2005).

2. *Skilling v. United States*, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) (holding honest services statute covers only bribery and kickback schemes); *United States v. Skilling*, No. 4:04–CR–25–2 (S.D.Tex. Jun. 24, 2013) (Amended Judgment) (amending sentence to 14 years imprisonment, a term of 3 years supervised release, and requiring Mr. Skilling to pay approximately $42 million in restitution).

dence surely would have supported such a charge also.

### The Punishment

The advisory sentencing guidelines called for incarceration of Mr. Brewer for 108 to 135 months and Mrs. Brewer for 70 to 87 months. For the reasons stated in the Court's judgment and those that follow, the Court severely punished the Brewers without imposing a prison sentence, in addition to the punishment inflicted by the Brewers upon themselves and their family.

The Brewers have been ordered to disgorge all of their assets except for one vehicle and their personal belongings. After many years of a legitimate $150,000 to $200,000 annual income, they now exist on $2800 per month from Social Security and disability.

The assets to be forfeited include a $930,000 note receivable, the loss of $7,000 per month in so-called "retirement" income, a vehicle, a home and Mrs. Brewer's ownership interest in a grocery store valued at several hundred thousand dollars.

Non-monetary punishment includes being shamed in their lifelong hometown of Clovis, New Mexico, population 39,197,[3] and being ostracized by their professional friends, some of whom testified against defendant Donald Brewer. And for their crime, they will live out their lives as convicted federal felons. (*See* Attachments A and B.)

### Legal Standard

■ 18 U.S.C. § 3553 provides in part that punishment should be decided taking into account:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

Section 3553(a)(2) calls upon the Court to consider the goals of sentencing. "[R]etribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally, and a court must fashion a sentence 'to achieve the[se] purposes . . . to the extent that they are applicable' in a given case." *Tapia v. United States,* —— U.S. ——, 131 S.Ct. 2382, 2393, 180 L.Ed.2d 357 (2011) (citing 18 U.S.C. § 3553).

### Application of Legal Standard

#### a. History and Characteristics of the Defendants

Section 3553(a)(1) requires the Court to consider "the nature and circumstances of the offense[s] and the history and characteristics of the defendant[s]." Here, the history and characteristics of the defendants weigh heavily on the Court.

---

**3.** United States Census Bureau State & County Quick Facts: clovis, New Mexico, http:// quickfacts.census.gov/qfd/states/35/3516420. html (last visited Sept. 12, 2013).

Photograph of Donald and Sherri Brewer, *in* Joshua Fechter, *Judge Rejects Shaming Letter in Couples' Fraud Case*, SAN ANTONIO EXPRESS-NEWS. Jul. 23, 2013.

Mr. and Mrs. Brewer are both 64 years of age. They wed in January of 1966, have remained married for forty-seven years, and have raised three children together. In August of 2004, Mr. Brewer was involved in an airplane crash. As a consequence of the crash and the related surgeries and procedures, Mr. Brewer has complete paralysis and constant nerve pain in his right leg, partial paralysis in his left leg, severe osteoporosis in his lower extremities, poor circulation, and poor temperature regulation. He has undergone several procedures to remove cysts from his tail bone, repair a broken hip, remove scar tissue near his spinal cord and treat various leg problems. Mr. Brewer is confined to a wheelchair 99% of the time. His injuries also require him to use a four-inch padded seat to avoid pressure sores, a shower chair and bar for the toilet, leg braces, a walker, a Medtronic Neurostimulation System which is implanted in his waist, and a regimen of half a dozen medications. Mr. Brewer also suffers from depression.

While a guidelines sentence of 108 to 135 months imprisonment for Mr. Brewer may be appropriate for a young or middle aged healthy individual found guilty of these crimes, such a term for a severely infirm 64–year–old man like Mr. Brewer is, as a practical matter, a life sentence. Mr. Brewer deserves to be punished. He does not deserve to die in prison.

Mrs. Brewer's history and characteristics also weigh on the Court. At the sentencing hearing, it was revealed that Mrs. Brewer's resistance to imprisonment stemmed, not from a fear for her own health, happiness and safety, but for the health, happiness and safety of her husband. Her defense counsel explained that Mrs. Brewer "lives to take care of Don Brewer." Indeed, while the Bureau of Prisons is equipped to care for prisoners of all levels of need, it would not likely meet the level of care that Mrs. Brewer has faithfully provided to Mr. Brewer in the years since the airplane crash. Consideration of these issues weigh in favor of a non-custodial sentence.

### b. Retribution

■ While imprisonment is often necessary for retributive purposes, it is not always the most effective[4] or the most fiscally sound option. The Bureau of Prisons calculated that the "fee to cover the average cost of incarceration for Federal inmates in Fiscal Year 2011 was $28,893.40."[5] In this case, given Mr. Brewer's severe physical limitations and continuing medical issues, his incarceration would cost the government far more than the average federal inmate.

Recognizing these costs, in the age of sequestration, prison time should not be imposed where it is not necessary. The Attorney General of the United States recently recognized this fact in relation to certain drug cases. In his August 12, 2013 memorandum, Attorney General Holder instructed United States Attorneys to decline to charge quantities necessary to trigger mandatory minimum sentences for certain non-violent drug offenders without significant criminal histories.[6] In establishing this policy, Attorney General Holder noted that "[r]ising prison costs have resulted in reduced spending on criminal justice initiatives, including spending on law enforcement agents, prosecutors, and prevention and intervention programs."[7] The new policy has garnered support from some unlikely allies.[8]

In the spirit of sparing dwindling resources by keeping non-violent offenders out of prison, the Court finds that non-custody retribution is appropriate for Mr.

---

4. Saby Ghoshray, *America the Prison Nation: Melding Humanistic Jurisprudence with a Value–Centric Incarceration Model*, 34 NEW ENG. J. ON CRIM. & CIV. CONFINEMENT 313, 322 (2008) (proposing a shift away from the heavy reliance on incarceration because it is ineffective, structurally unsustainable, and unable to accomplish most of the objectives of criminal punishments—deterrence, retribution, incapacitation, and rehabilitation).

5. Annual Determination of Average Cost of Incarceration, 78 Fed.Reg. 52, 16711 (Mar. 18, 2013). This number is calculated "by dividing the number representing Bureau facilities' monetary obligation (excluding activation costs) by the number of inmate-days incurred for the preceding fiscal year, and then by multiplying the quotient by 365."

6. Memorandum to the United States Attorneys and Assistant Attorney General for the Criminal Division: Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (August 12, 2013).

7. *Id.*

8. Charlie Savage, *Justice Dept. Seeks to Curtail Stiff Drug Sentences*, N.Y. TIMES, Aug. 12, 2013, available at http://www.nytimes.com/2013/08/12/us/justice-dept-seeks-to-curtail-stiff-drug-sentences.html?pagewanted=all (discussing Newt Gingrich's support of a similar proposal); *see also* Press Release, Sen. Paul Statement Mandatory Minimum Sentencing Reform (Aug. 12., 2013), available at http://www.paul.senate.gov/?p=press_release&id=919 ("I am encouraged that the President and Attorney General agree with me that mandatory minimum sentences for non-violent offenders promote injustice and do not serve public safety.").

and Mrs. Brewer, who have and continue to suffer in other ways.

### c. Deterrence

Section 3553(a)(2)(B) requires the Court to impose a sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). At the sentencing hearing, the Government stated that its "big concern" with regard to sentencing was deterrence, explaining that there are many opportunities to take advantage when dealing with military contracts and citing "a tremendous amount of fraud in the procurement system." (Sentencing Hearing Transcript at page 29.) While the Court recognizes the importance of deterrence, it is also realistic about its limits, especially in the realm of white collar crime, where the powers of greed and ambition are often stronger than any deterrent effect.[9] The Brewers did not learn from the example of Bernie Madoff,[10] who did not learn from the example of John Rigas,[11] who did not learn from the example of Ivan Boesky.[12] And these criminals did not learn from the horse thieves who came before them, hung in the American West in the name of deterrence.[13] As journalist H.L. Mencken put it: "Hanging one scoundrel, it appears, does not deter the next."[14] Indeed, despite the use of the cane in Singapore[15] and the blade and stone in Saudi Arabia, Sudan and Nige-

---

9. David A. Westbrook, *Corporation Law After Enron: The Possibility of a Capitalist Reimagination*, 92 Geo. L.J. 61, 64 (2003) ("The judicial system is hardly an ideal way to conduct business life, and the threat of litigation provides insufficient deterrence, or at least guidance, for ambitious managers, as the Enron case demonstrates.").

10. Diana B. Henriques, *Madoff Is Sentenced to 150 Years for Ponzi Scheme*, N.Y. Times, Jun. 29, 2009, available at http://www.nytimes.com/2009/06/30/business/30madoff.html?ref=bernardlmadoff (discussing the former Wall Street trader who pleaded guilty in 2009 to running a Ponzi scheme and was sentenced to 150 years in prison, the maximum for his crimes).

11. Roben Farzad, *Founder of Adelphia Is Sentenced to 15 Years in Prison*, N.Y. Times, Jun. 20, 2005, available at http://www.nytimes.com/2005/06/20/business/20cnd-rigas.html ("John J. Rigas, who built the Adelphia Communications Corporation into the country's sixth-largest cable company, was sentenced to 15 years of prison today for looting hundreds of millions of dollars from the company's coffers and concealing its true debt load from investors.").

12. James Sterngold, *Boesky Sentenced to 3 Years in Jail in Insider Scandal*, N.Y. Times, Dec. 19, 1987, available at http://www.nytimes.com/1987/12/19/business/boesky–sentenced–to–3–years–in–jail–in–insider–scandal.html?pagewanted=all&src=pm ("Ivan F. Boesky, once among the financial world's most powerful speculators and now a symbol of Wall Street's excesses, was sentenced yesterday to three years in prison for conspiring to file false stock trading records.")

13. Richard A. Posner, *An Economic Theory of Criminal Law*, 85 Colum.L.Rev. 1193, 1212 (1985) ("hanging of horse thieves in the nineteenth century American West is another example of a penalty whose great severity reflects the low probability of punishment more than the high social cost of the crime.").

14. Henry Louis Mencken and George Jean Nathan, The American Mercury, 1929, at page 126.

15. Michael P. Matthews, *Caning and the Constitution: Why the Backlash Against Crime Won't Result in the Back–Lashing of Criminals*, 14 N.Y.L. Sch. J. Hum. Rts. 571, 599 (1998) ("Even some of the strongest supporters of caning question its deterrent effect on adult prisoners. There is no evidence showing that severe corporal punishment improves behavior or reduces recidivism among juvenile or adult offenders. In addition, Singapore may have a lower crime rate than the U.S., but 'the number and seriousness of crimes committed by juveniles is rising dramatically,' despite the harsh criminal penalties.").

ria,[16] crimes continue to be committed around the world. The Court finds that incarceration of the Brewers would not significantly deter future offenders.

### d. Incapacitation

Section 3553(a)(2)(C) concerns incapacitation, instructing the Court to impose a sentence "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The Court finds the goal of incapacitation is sufficiently achieved by the conditions of probation in this case. In addition to the applicable mandatory and standard conditions, the Court also prohibited the defendants from becoming employed in any fiduciary position or becoming employed in a position requiring the handling of money or the disbursing of funds without the prior approval of the Probation Officer. Imprisonment is not necessary to keep the Brewers from committing financial crimes again.

### e. Rehabilitation

Section 3553(a)(2)(D) concerns the rehabilitative goals of sentencing. It requires the Court to impose a sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The most relevant aspect of rehabilitation in this case is the defendant's need for medical care. As outlined above, Mr. Brewer requires extensive care for the injuries he sustained as a result of the crash. The

Court finds these needs are best met outside of the prison system.

### The Court Relies on United States v. Duhon (Fifth Circuit)

In addition to the goals of sentencing, Section 3553(a)(3) requires the Court to consider "the kinds of sentences available" and (a)(4) requires the Court to consider "the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(3). Here, despite finding that the defendants were statutorily eligible for probation, United States Probation suggested to the Court that defendants were ineligible for probation pursuant to advisory Sentencing Guideline § 5B1.1, comment n. 2.[17]

The Court's variance in contravention of Sentencing Guideline § 5B1.1, comment n. 2 is reasonable in this case and is not without precedent. In *United States v. Duhon*, the defendant pleaded guilty to possession of child pornography, a Class C felony. *United States v. Duhon*, 541 F.3d 391, 394 (5th Cir.2008). Despite the prohibition against probation imposed by Sentencing Guideline § 5B1.1, comment n. 2, the district court applied a substantial downward variance from the guidelines and sentenced Duhon to sixty months of probation. *Id.* at 398. The district court based its decision on: (1) the defendant's lack of criminal history; (2) the lack of any indication the defendant posed a threat to

---

16. Adrien Katherine Wing, *Twenty–First–Century Loving: Nationality, Gender, and Religion in the Muslim World*, 76 FORDHAM L.REV. 2895, 2899 (2008) ("Saudi Arabia, Sudan, and certain states in Nigeria may be among the few Muslim jurisdictions to apply shari'a in the area of criminal law, often amputating hands for theft or stoning people for adultery.").

17. Sentencing Guideline § 5B1.1, comment n. 2 provides:

Where the applicable guideline range is in Zone C or D of the Sentencing Table (i.e., the minimum term of imprisonment specified in the applicable guideline range is ten months or more), the *guidelines do not authorize a sentence of probation. See* § 5C1.1 (Imposition of a Term of Imprisonment).

the public; (3) the benefit defendant would derive from continuing his psychological treatment; (4) the fact that incarceration would cause the defendant to lose his Social Security disability benefits; and (5) the fact that the co-defendant received probation for similar conduct. *Id.* at 395. The government argued the district court erred by disregarding Guideline § 5B1.1, comment n. 2, which precluded probation in the case. *Id.* at 397–98. The Court of Appeals for the Fifth Circuit held:

> it is evident from the transcript of the sentencing hearing that the district court strongly believed that probation was appropriate in this case given Duhon's unique circumstances. Therefore, we cannot say that any potential error [of ignoring the guideline] was outcome determinative and so affected substantial rights as to allow us to remand the case to the district court.

*Id.* at 398. The court concluded the sentence was substantively reasonable. *Id.;* *see also United States v. Pyles,* 272 Fed. Appx. 258, 261–62 (4th Cir.2008) (holding that variance sentence of five years probation with six months in home confinement for distribution of crack cocaine despite application of § 5B1.1, comment n. 2, was substantively reasonable).[18] Here, as in *Duhon,* the Court strongly believes probation is appropriate given the unique circumstances of the case.

The Court sentenced the defendants to a term of five years probation on each count to run consecutively to each other with the intention of keeping defendants on probation for the remainder of their lives. At the sentencing hearing, the Court acknowledged that some aspects of its sentence may be illegal. Indeed, 18 U.S.C. § 3564

provides that "[m]ultiple terms of probation, whether imposed at the same time or at different times, run concurrently with each other."

While it is true that "the scope of judicial discretion with respect to a sentence is subject to congressional control," *Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Court finds that those congressional controls do not adequately take into account the unique factors and complexities of this case. This Court, after having sat through three weeks of trial time and a full day sentencing hearing, is well suited to set aside the one-size-fits-all statutory mandates of the Legislative Branch and instead craft a sentence that fits the facts of this case, the defendants' individual circumstances and the separate power of the Judicial Branch.

### Conclusion

■ In conclusion, after thoroughly examining the evidence at trial, the defendants' background and circumstances, the guidelines, and the goals of sentencing, the Court finds all factors weigh in favor of a non-custodial sentence for these defendants.

Should the appellate court disagree as to Mr. Brewer, separate consideration should be given to Mrs. Brewer for a non-custodial sentence. Significant testimony from several witnesses portrayed Mr. Brewer as authoritarian and controlling in the workplace. This Court reasonably infers that such characteristics were present in the husband-wife relationship, leading Mrs. Brewer to commit the acts required by Mr. Brewer, thus leading to her felony conviction.

---

**18.** Notably, in both *Duhon* and *Pyles,* upon initial review, the Fifth Circuit Court of Appeals and Fourth Circuit Court of Appeals reversed the sentences of the district courts.

However, in both cases, the Supreme Court granted certiorari, vacated the appellate judgments, and remanded for reconsideration.

718

# Clovis

Clovis couple convicted of fraud

April 25, 2013

A Clovis couple was convicted of bilking the Air Force of $6.5 million Thursday by a federal jury in San Antonio, Texas.

Donald Dean Brewer and his wife Sherri Lynn Brewer, both age 62, face 20 years in federal prison and are being forced to repay more than $6 million, according to a press release from the U.S. Attorney Robert Pitman.

Also convicted in the month-long trial was James McKinney, 60, of San Antonio.

The Brewers are the former owners of Brewer Jeep and Brewer Mitsubishi in Clovis.

Prosecutors charged that McKinney and the Brewers created a sham subcontracting business in 2003—Enterprise & Deployment LLC—that provided no useful service.

At the time, Donald Brewer was employed by KARTA Technologies Inc., as a programmer at Brooks City Base in San Antonio. McKinney was a vice president at Ark Systems.

Ark was hired to provide computer technology for Air Force medical systems around the world. Prosecutors charged that after McKinney and the Brewers created the sham E & D firm, they inserted it as a subcontractor and forced charges on prime contractors.

The result was to overcharge the Air Force on $33.5 million worth of contracts, according to prosecutors.

Lawyers for the Brewers and McKinney didn't immediately respond for comment. When the couple was indicted in November 2011, their attorney Craig King of Washington, D.C., said E & D "took what had been an incredibly chaotic and expensive cabling project and managed this project in such a way that, for the first time in the history of the project, it came in on budget and on time."

There was no response at the Brewer home in Clovis.

Jurors deliberated three days before returning a guilty verdict on all 17 charges against the trio, including conspiracy to defraud, wire fraud, and major fraud.

All three remain free on bond pending a June 28 sentencing hearing before U.S. District Judge Fred Biery.

*ATTACHMENT B*

# Clovis

News Journal

Federal judge rejects couple's apology letter

July 22, 2013

By Kevin Wilson

CNJ staff writer

kwilson@cnjonline.com

A federal judge who ruled a Clovis couple must write a letter of apology as part of sentencing for bilking the Air Force out of $3.2 million has rejected a submitted draft, and told the couple to do it correctly or prepare for federal prison, according to court records.

In April, a jury convicted Donald Dean Brewer and wife Sherri Lynn Brewer, both 64, of 16 counts of conspiracy to defraud the United States, wire fraud and major fraud against the United States. Prosecution said the Brewers, former owners of Brewer Jeep and Brewer Mitsubishi in Clovis, and James McKinney of San Antonio, created a sham subcontracting business in 2003 that provided no useful service but forced overcharges on prime contractors. McKinney was also convicted.

In all, $6.4 million was stolen.

Additionally, Biery denied a motion submitted on behalf of Donald Brewer asking for $564,000 of the stolen money to pay attorney fees. The Brewers paid a "nationally known" law firm approximately $1.6 million out of the stolen money for representation, Biery wrote in rejecting the motion.

The money used to pay legal fees would have belonged to the Brewers with an acquittal, Biery said, but the convictions meant the money was never legitimately theirs.

"In hindsight, the Brewers could have put the disputed assets in trust until the end of the criminal litigation, and probably would have qualified for court-appointed counsel," Biery wrote. "In doing so, they would have received similarly excellent representation from San Antonio lawyers at $125 per hour, and the taxpayers would have another $1 million available for restitution."

"Having rolled the dice and lost, the Brewers now want American taxpayers to pay their gambling loss."

In late June, Judge Fred Biery spared the Brewers a prison sentence, instead opting for lifetime supervision and a requirement the couple write a letter admitting their crimes that is published in the Clovis News Journal. The couple was also required to pay restitution, and stripped of all assets and equities except for one automobile.

At the time of the sentencing, according to the San Antonio Express–News, Biery said, "It better be a real strong confessional. It better say, 'I am a liar. I am a thief. I betrayed my friends. I betrayed the United States.'"

Biery noted it was an unusual sentence and probably illegal under federal statute.

Biery's ruling, filed Monday in San Antonio, indicates the letter presented by counsel did not meet the standard.

"While the Court realizes defendants are awaiting notification of whether the United States will appeal the Court's sentencing decision, the draft letter submitted by counsel is totally unacceptable," Biery wrote. "If necessary, the Court will refresh defendants' memories as to the specific evidence of their lies and misdeeds shown by the evidence in the record."

If a letter is not approved by the court, warrants would be issued for the Brewers to return to San Antonio for revocation of probation proceedings and federal prison sentencing, Biery wrote.

A copy of the rejected letter was not included in the filing sent to the CNJ from the court.

CNJ Publisher Ray Sullivan said Monday he is not aware of any such letter from the Brewers arriving at the newspaper's office.

According to the filing, the Brewers used the money on vehicles, homes, an airplane and the purchase of the S & S Supermarket in Clovis. Additionally, according to the filing, Sherri Brewer was paid $7,000 per month for retirement with no evidence presented that she ever worked at the store.

Attempts to contact lawyers for the Brewers on Monday were unsuccessful.