**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 17-30725

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

MEHMOOD M. PATEL,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court for the
Western District of Louisiana
USDC No. 6:14-CV-604

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

A jury convicted Mehmood Patel of 51 counts of healthcare fraud for performing unnecessary medical procedures. After we affirmed the convictions, 485 F. App'x 702 (5th Cir. 2012), Patel sought postconviction relief arguing he had new information showing violations of his constitutional rights. 28 U.S.C. § 2255. The district court rejected Patel's claims, and we only authorized a single issue for appeal: whether the district court abused its

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**No. 17-30725**

discretion in not granting Patel an evidentiary hearing to determine if a witness falsified certain trial exhibits.

I.

A.

Patel worked as a cardiologist in Lafayette, Louisiana. In 2002, a nurse at Patel's clinic contacted a federal health care fraud hotline to report fraudulent Medicare and Medicaid billing. Soon after, an additional witness came forward: Christopher Mallavarapu, a physician who worked for Patel. The employees alleged that Patel was billing the federal government for unnecessary angioplasties.[1]

A year after the feds received the tip, the government executed a search warrant at Patel's office. Among other medical records, agents seized CDs containing angiograms performed by Patel. The parties call these CDs the "gold CDs" because of their color. The government also imaged the hard drives of seven computers in the clinic and left the physical hard drives.

A few years later, a grand jury charged Patel with 94 counts of health care fraud. The resulting trial lasted nearly three months. The government called ten experts. Patel called no experts but testified in his own defense for 19 days. Both sides used the gold CDs and information copied from Patel's hard drives that the government compiled onto an external drive. While testifying, Patel noticed some inconsistencies in the angiograms on the external hard drive and advised his counsel during a break that some sequences were out of order. The government responded that Patel could use

---

[1] An angioplasty is an invasive procedure that involves threading a catheter with a balloon through an artery in the groin area up into a narrowed artery. The balloon then expands and a stent can be inserted into the artery. Prior to performing an angioplasty, doctors typically perform a diagnostic test called an angiogram. In an angiogram, the doctor threads a catheter into the heart and injects dye to test blood circulation and determine the severity of artery blockage.

the original CDs if he was dissatisfied with the duplicates that the government made. Patel replied, "I think I can proceed because I know exactly where the pictures are," and he continued to use the government's duplicates during his entire testimony.

The jury was initially hung and reached a verdict only after the judge gave an *Allen* charge. It found Patel guilty of 51 counts of health care fraud and acquitted him on the remaining 40 counts. Patel was sentenced to ten years in prison.

## B.

The criminal trial was not Patel's only problem. Before the trial began, Mallavarapu filed a *qui tam* action against Patel under the False Claims Act based on the same allegations as the criminal case. As is typical, the complaint was sealed while the government decided whether to intervene. When it elected to do so, it also successfully sought a stay of the civil case pending the criminal trial. Patel's attorney was notified about the suit at that time and the complaint was unsealed. After the criminal trial, the stay was lifted and the civil litigation commenced.

As will become important, the court held a hearing on a motion in limine Patel filed seeking to exclude the gold CDs as unreliable. Patel presented expert testimony about supposed discrepancies in the CDs, but the court concluded that there were innocent explanations for the inconsistencies and held the CDs would be admissible in the civil trial.

## C.

In 2014, with the civil case still pending, Patel filed his section 2255 motion. He asserted the following claims: (1) a *Brady* claim alleging concealment of Mallavarapu's role in the investigation and prosecution; (2) a *Brady* claim related to Mallavarapu's providing Patel's files to the government, which he argued amounted to a Fourth Amendment violation; (3) prosecutorial

misconduct for failing to disclose that Mallavarapu took CDs and records from Patel's office, encouraging his act of theft, and entrusting him with CDs without maintaining a proper chain of custody; and (4) prosecutorial misconduct based on allegations that the government knew Mallavarapu had falsely described his role in the *qui tam*.

Patel later sought discovery and a hearing. The request relied on expert witness Michael Hale, who examined the gold CDs and found numerous discrepancies. Hale contends (1) that many of the angiograms on the CDs appear to have been created before the procedures took place; (2) that some have missing series, which are part of a group of images in sequence used by the program to show a sequential moving image; (3) that some contain incorrect or missing information, such as a patient's date of birth; and (4) that some files on the external hard drive used at trial have "run" and "frame" numbers that appear to be different from what is shown on the CDs Hale examined.

The district court rejected all of Patel's claims in an 85-page opinion. It also denied an evidentiary hearing. Relying on the record from both the criminal and civil case, it concluded a hearing was unnecessary because "the affidavits provided by Patel have no independent indicia of reliability in light of the contradictions between them, the record evidence[,] and the Court[']s knowledge and understanding of these cases."

We granted a certificate of appealability only on the question whether the district court should have held a hearing to resolve Patel's allegations that Mallavarapu altered the angiograms.

## II.

Having now reviewed full briefing on that issue, we find no abuse of discretion in the district court's refusal to hold an evidentiary hearing in the

section 2255 matter. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) (reviewing refusal to hold hearing for abuse of discretion). A district court must grant such a hearing on a disputed fact issue in a postconviction proceeding unless the record conclusively shows that the petitioner is entitled to no relief. 28 U.S.C. § 2255(b). A district court thus need not hold a hearing when resolution of the factual dispute will not affect the outcome. *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

That is the case here. This is a "no hearing" case in only the most formal sense. Although the district court did not hold a hearing about alleged manipulation of the CDs using the docket number for this postconviction proceeding, it did hold one in the civil case. After hearing from five witnesses, including an expert Patel called, the district court expressed serious doubt about Patel's allegation of manipulation. It found it "very hard to believe" that irregularities in some of the dates could not be attributed to "people working late at night at the practice." The court also emphasized that the testimony showed that, in files with the wrong date, the dates were "consistently inconsistent," suggesting there was something wrong with the computer's dating system. Another innocent explanation flowed from the fact that some of the allegedly misdated files were for tests conducted before the long Labor Day weekend, which made it likely that the misdating simply represented a delay in downloading them. The court concluded by noting that many other "common sense factors" supported the accuracy of the CDs.

The civil hearing also allowed the court to make a number of findings that show Mallavarapu likely did not have the opportunity to manipulate the CDs. It rejected Patel's contention that Mallavarapu gave files to the government; in fact, the government obtained the files from the search. It also explained that the seized gold CDs were kept in a locked room separate from

## No. 17-30725

the rest of the evidence and Mallavarapu did not have unsupervised access to them.

Patel advances no convincing reason why his arguments would have succeeded in a second hearing when they failed at the first.[2]  It thus was reasonable for the district court to conclude that what would be essentially a second hearing on the same topic was unnecessary.  It was also entitled to rely on its conclusion from the civil hearing that the allegations did not establish wrongdoing or render the CDs unreliable.

But there is a more fundamental problem for Patel.  Even if he could show some willful manipulation of the CDs by Mallavarapu, that alone would not entitle him to relief.  A due process claim based on the presentation of false evidence requires showing government knowledge of the falsity.  *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  Patel has offered no evidence that the government knew about any doctoring of the CDs (assuming it happened at all), relying only on assertions that it gave Mallavarapu unsupervised access to the CDs.  But the district court rejected that as a factual matter.  And even if it were true, Patel cites no authority saying that merely giving access would establish government knowledge of any falsity.

There are other sound reasons why a hearing was unnecessary, such as Patel's knowledge during the criminal trial of Mallavarapu's role and many

---

[2] Patel argues that his current expert found more discrepancies than the one who testified in the civil case.  But the thrust of the allegations is nearly identical.  The only major addition is testimony about the nature of the software and its alleged susceptibility to easy alteration.  General susceptibility to alteration would not undo the specific reasons the court gave for finding neither manipulation nor the opportunity to do so.  Likewise, while the expert in the civil case did not examine the CDs related to the counts of conviction, he did examine many others admitted in the criminal trial.  Nothing suggests that there is a material difference about risk of alteration for the CDs on the counts that led to conviction versus the ones that led to acquittal.

## No. 17-30725

other facts that gave rise to the section 2255 allegations he later asserted.  But the ones we have already highlighted are enough to demonstrate that the district court did not abuse its discretion.

The judgment is AFFIRMED.